IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTINA WISNER,                                3:13-CV-02269-AC

      Plaintiff,                                OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

      Defendant.


ACOSTA, Magistrate Judge.

      Plaintiff Christina Wisner seeks judicial review of a final decision of the Commissioner of

the Social Security Administration ("SSA") in which she denied Plaintiff's applications for

Supplemental Security Income ("SSI") under Title XVI and for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act. This court has jurisdiction to review the

1- OPINION AND ORDER

Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, the court finds the decision of the Commissioner is not supported by substantial evidence in the record and the ALJ's decision is reversed and this matter is remanded for the calculation and payment of benefits.

## ADMINISTRATIVE HISTORY

Plaintiff filed her applications for DIB and SSI on April 26, 2010, and alleged a disability onset date of December 31, 2003, due to "endometreosis, cysts, polyps, chronic migraines, depression." Tr. 195.[1]  The applications were denied initially and on reconsideration. An Administrative Law Judge ("ALJ") held hearings on February 28 and June 5, 2012. Tr. 33-68. At the hearing Plaintiff was represented by an attorney. Plaintiff, a lay witness, a medical expert, and a vocational expert ("VE") testified.

The ALJ issued a decision on June 28, 2012, in which he found Plaintiff was not disabled. Tr. 17-26. That decision became the final decision of the Commissioner on October 22, 2013, when the Appeals Council denied Plaintiff's request for review. Tr. 1-4.

On December 20, 2013, Plaintiff filed a complaint in this court seeking review of the Commissioner's decision.

## BACKGROUND

Plaintiff was born in July 1979, and was 24 years old on her alleged onset date. Tr. 166. She completed two years of college. Tr. 196.

---

[1] Citations to the official transcript of record filed by the Commissioner on June 25, 2014, are referred to as "Tr."

2- OPINION AND ORDER

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.

*Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILTY EVALUATION

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 ("Listed Impairments").

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

4- OPINION AND ORDER

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. § 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since her December 31, 2003, alleged onset date. Tr. 19. Her date last insured is March 31, 2009.

At Step Two the ALJ found Plaintiff has severe impairments of endometriosis, gastritis, migraine headaches, substance abuse currently using marijuana, depression, posttraumatic stress disorder ("PTSD"), and obesity. *Id.*

At Step Three the ALJ determined Plaintiff's impairments did not equal in severity a listed impairment, and found Plaintiff retained the RFC to perform a full range of work at all exertional levels. She is limited to simple, entry-level work with occasional interaction with coworkers and the public. She should avoid exposure to vibration, and heavy moving machinery, and unprotected heights. Tr. 21.

5- OPINION AND ORDER

At Step Four, the ALJ found Plaintiff was unable to perform any past relevant work.  Tr. 24.

At Step Five, the ALJ found Plaintiff was capable of performing other work, including office helper, janitor, and hand packager.  Tr. 25.

## THE MEDICAL EVIDENCE AND TESTIMONY

### I.  The Medical Record

The parties are familiar with the extensive medical record and it will be set out below as relevant.

### II.  Testimony at February 28, 2012 Hearing

Plaintiff testified that she gets headaches every day that last "a long time," and that she gets migraines about once a week.  Tr. 65.  She said a "migraine is debilitating, I can't move.  I constantly have my hands on my head to put pressure.  I can't really hear anything."  *Id.*  She takes imitrex, which takes the majority of the migraine away, but not the headache.  Plaintiff testified that she has had migraines since she was 14 years old.  She is not being treated for migraines because she is "kind of caught in limbo with my insurance, and it's kind of how it's been throughout my life."  Tr. 66.

Plaintiff is 5'4" tall and weighs 262 pounds.  She smokes marijuana for severe nausea, and has for ten years, though in "the last five it's gotten obscenely worse."  Tr. 67.  Plaintiff testified she has mental health conditions that preclude her from "productively be[ing] out in society."  *Id.*  She lives in her car.

The hearing was continued pending Plaintiff's appointment with a neurologist.

### III.  Testimony at June 5, 2012 Hearing

David Huntley testified as a medical expert, though his credentials are not clear.  Tr. 36.  Dr.

6- OPINION AND ORDER

Huntley reviewed medical records through Exhibit 19F, which is Tr. 538.[2] Dr. Huntley said Plaintiff had medically determinable impairments of chronic endometriosis, gastritis, a structural abnormality on her liver, chronic migraines, and varying psychiatric diagnoses. He noted she chronically used cannabis. Asked how to confirm the presence of a migraine, Dr. Huntley testified the clinical description cannot be validated, and the diagnosis is based on the patient's description. Tr. 38-39.

Dr. Huntley stated it was possible to have a laparoscope and then a recurrence of endometriosis. He noted gastritis was proven by biopsy, but there should be no functional limitations arising from Plaintiff's liver. Dr. Huntley testified some people have migraines as frequently as Plaintiff and are fully employed, while others have three per month and say they cannot work. Tr. 40. He pointed out the majority of Plaintiff's emergency room visits were for abdominal pain, not migraines, and pointed to a January 2012 note that Plaintiff has never sought treatment from a specialist for headaches. Dr. Huntley noted a November 2007 chart note documenting the effectiveness of imitrex. Dr. Huntley did not believe Plaintiff's headaches and migraines were disabling. Dr. Huntley concluded that the medical evidence did not establish any impairment which met or medically equaled in severity a listed impairment.

Plaintiff was 32 years old at the time of the hearing. Tr. 43. She completed her freshman year of high school and three years of college. She "couldn't complete it because of my problems . . . . I just couldn't show up half the time because I mean my headaches, and my stomach and the reason why I didn't go into the hospital is they flagged me and said I couldn't be treating myself that way." *Id.* "They said you can't be going into the emergency room all the time to take care of this.

---

[2] . There are additional medical records from Tr. 539-87.

And I didn't have insurance. So now when stuff happens, I just curl up in a ball and stay there." Tr. 43-44.

She has worked, but never for very long because of her health. Tr. 44. Her longest job was working for her mother. As a child she and her mother moved often. Her mother has been married to five abusive alcoholics the last of whom raped Plaintiff when she was eleven. Tr. 45-46. She is very close to her mother and she has not committed suicide because she doesn't want to leave her mother or hurt her. Her last stepfather committed suicide in front of her mother.

Plaintiff testified that she thinks her physical problems are worse than her mental problems, but said everyone around her would disagree. She lives in the car her mother gave her.

Plaintiff stated she could stand for about a half an hour at a time, for a total of about one hour in an eight-hour day before she has to lie down or curl up due to stomach pain. Tr. 48. She takes Motrin 800 for the pain. Plaintiff can sit for about 45 minutes before she needs to change position. Tr. 49. She lies down about one third of each day.

She smokes marijuana daily which she obtains by going "to a place and they give me about a gram of meds twice a week for free." Tr. 49-50. Plaintiff noted it is for her nausea and said "I haven't been doing it every day." Tr. 50. She does not smoke marijuana when she has a headache because it won't help and it "just makes me feel high and I'm not trying to do it to feel high . . . .you know, because like I said, that's the past and I don't want that so." *Id.*

Plaintiff thinks her concentration is okay, but she has trouble focusing when grocery shopping. She uses a motorized cart and requires help to lift a ten pound bag of potatoes because it hurts. Tr. 51. She has stabbing abdominal pain about twice a day which lasts less than a minute, with pain afterward lasting from 30 minutes to an hour.

8- OPINION AND ORDER

She collects bottles and cans from garbage cans and the neighbors to buy gasoline. Tr. 53. Her neurologist has put her on a heart monitor to attempt to determine the migraine triggers.

Plaintiff testified that she wants to be part of society and she has tried to work but "I just can't seem to do it. And I've tried my hardest. I just can't do it. My body won't let me do it, you know." Tr. 54.

## DISCUSSION

Plaintiff contends the ALJ erred by  (1) improperly weighing the medical evidence; (2) finding Plaintiff less than fully credible; and (3) failing to credit lay testimony.  Because the first issue is dispositive, the court need not address the latter assertions.[3]

## I. The Medical Evidence

Disability opinions are reserved for the Commissioner.  20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may reject it only for clear and convincing reasons. *Id.* (treating physician); *Widmark v. Barnhart,* 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician).  Even if one physician is contradicted by another

---

[3] The medical opinions are dispositive, as set out *infra,* even if the ALJ's credibility finding is supported by substantial evidence.

physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn,* 495 F.3d at 632; *Widmark,* 454 F.3d at 1066. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark,* 454 F.3d at 1066 n.2. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

### A. Sonia Sosa, M.D.

Dr. Sosa completed a form prepared by counsel on February 27, 2012. Tr. 536-38. She noted she had been treating Plaintiff since April 2011 for endometriosis, chronic migraines, depression, gastroesophogeal reflux disease ("GERD"), and fibroids. Dr. Sosa opined that Plaintiff could occasionally lift or carry 25 pounds and frequently lift or carry less than 10 pounds, she could stand or walk 15 minutes at a time for a total of one hour in an eight hour work day. Dr. Sosa thought Plaintiff could sit for 30 minutes at a time for a total of three hours in an eight-hour work day, and the rest of her time would be spent lying down. Tr. 537. Dr. Sosa stated that Plaintiff should never climb, balance, stoop, kneel, crouch or crawl, and she suffered from severe pain, nausea, and emesis, with moderate fatigue and weakness. *Id.*

Dr. Sosa noted Plaintiff had generalized anxiety and/or PTSD, with recurring nightmares and depression which made it difficult to deal with other people. Tr. 538. Her medications caused fatigue, and her symptoms and medication side effects interfered with Plaintiff's ability to sustain the concentration required to perform even simple work tasks. Dr. Sosa opined that Plaintiff's concentration and attention would be impaired to such a degree that she could not perform simple work tasks ten percent of the normal work week, and that Plaintiff would miss more than two days

per month because of her impairments, symptoms, medications, and side effects, specifically because of pain from migraines, endometriosis and severe nausea and vomiting. *Id.*

The ALJ gave Dr. Sosa's opinion little weight. Tr. 23. The ALJ stated the opinion was not consistent with the treatment record, and that Dr. Sosa provided no basis for the described limitations. *Id.* The Commissioner argues that Dr. Sosa's treatment record does not support the limitations she assessed. Contradictions between a doctor's opinion and that doctor's own clinical notes and observations "is a clear and convincing reason for not relying on the doctor's opinion[.]" *Bayliss,* 427 F.3d at 1216.

### (1)  Dr. Sosa's Treatment Record

Plaintiff was treated in the emergency room on February 7, 2011, for pelvic pain. Imaging revealed a three centimeter ovarian cyst. Tr. 436. She returned to the emergency room on February 26 for treatment of nausea and vomiting. Tr. 429. On March 2 she was seen at the Women's Health Center to follow up the emergency room visit and was assessed with ovarian cyst, endometriosis, and vaginitis. Plaintiff reported chronic pelvic pain significantly increased approximately three years earlier. Tr. 512. Plaintiff said she had recently acquired insurance and was advised to obtain a primary care physician. Tr. 513. March 4, 2011, images revealed ovarian cysts and uterine fibroids. Tr. 517, 510.

Dr. Sosa began treating Plaintiff on April 28, 2011. Tr. 468. Dr. Sosa noted "[multiple] medical concerns," with Plaintiff's priority being the replacement of her IUD and refill of her Cymbalta. *Id.* Plaintiff reported pain throughout her body of 7-9/10. Tr. 471. Dr. Sosa assessed Candidiasis and depression. On May 5 Dr. Sosa replaced the IUD. Tr. 463. On May 26 Dr. Sosa performed a full establish-care examination, noting Plaintiff is "fairly distressed" and wanted to kill

herself and her boyfriend in a car wreck that morning. Tr. 460. Plaintiff reported citalopram worked best of the medications she had tried, but it was not working well right now. She had tried increasing the dose but could not tolerate it. She had no other mental health care. Plaintiff reported frequent migraines with an aura and nausea with pain at 3-5/10. Tr. 471. Dr. Sosa noted Plaintiff was tearful and obese, with congruent mood and affect. Tr. 461. Dr. Sosa considered calling the Cascadia crisis line, but was able to calm Plaintiff and convince her to go to Cascadia immediately after her appointment with Dr. Sosa. Dr. Sosa increased the citalopram and prescribed imitrex.

Dr. Sosa saw Plaintiff on June 16, 2011. Tr. 455. Plaintiff reported imitrex did not work well and made her feel weird. She noted headaches with intermittent photophobia. Promethazine helped with nausea, and she was taking it nearly daily. Plaintiff had increased citalopram but felt "really snappy and angry." *Id.* She had not gone to Cascadia because she was afraid of what they would tell her. Dr. Sosa concluded that, because imitrex did not help "tension HAs seem more likely." Tr. 456. She prescribed motrin, heating pads, massage, and acupuncture.

On July 7 Plaintiff reported diarrhea , nausea and vomiting for four days. She had daily nausea, it did not seem related to pain, and she had not seen a gastroenterologist for pain. Tr. 453. Her pelvic pain of 7-9/10 and migraines were her worst problems. Tr. 471. Dr. Sosa noted the possible causes of nausea were gastroporesis, GERD, pelvic pain, abdominal migraine, and anxiety. Dr. Sosa referred Plaintiff to a gynecologist to see whether pelvic pain was related to endometriosis, commenting that nausea may improve if pelvic pain improves. Tr. 454.

On August 4, 2011, Plaintiff reported daily nausea and vomiting, worse in the mornings and evenings. Tr. 451. She had some reflux but not daily. She did have a headache after vomiting, though not usually a migraine headache. She had not had a migraine for three to four weeks. She

had "severe" pelvic pain on the left side for the last few days of 4-6/10. Tr. 471.. Plaintiff did not receive the referral to gynecology and so had not made that appointment. Dr. Sosa noted other possible sources of nausea and vomiting were GERD, gastroporesis, and psychogenic. Dr. Sosa prescribed reglan given hypoactive bowel sounds. She stated other possible causes of pelvic pain were ovarian cysts, endometriosis, fibroids, and mittelschmirtz. An August 9 ultrasound showed the left ovarian cyst was slightly larger than it had been in May. Tr. 474. On August 11 Plaintiff reported headache pain of 7-9/10. Tr. 471.

On August 17, 2011, gynecologist Kimberlynn M. Heller, D.O. examined Plaintiff. Tr. 409-10. Plaintiff reported intense pelvic pain daily with intermittent pain episodes. Pain increased at certain times of the month. Positional changes or time made the pain resolve. The pain could last an hour. Dr. Heller diagnosed vaginal pain with vulvar lesions and rash. Tr. 410. She prescribed Vistaril. On September 8, 2011, an EGD was performed because of nausea, vomiting, and GERD. Tr. 425. It showed GERD, with no evidence of erosive esophigitis, and minimal nonerosive gastritis.

On September 22 Dr. Sosa noted Plaintiff had not understood prescription instructions and had failed to increase omeprazole for reflux. Tr. 449. Plaintiff was "still vomiting the same amount," with stomach pain of 4-6/10. *Id.*, Tr. 471. Dr. Sosa noted Plaintiff had been referred to the vulvar pain clinic but it was not covered by insurance. Hydroxyzine was prescribed but did not help. On November 16, 2011, Plaintiff reported neck pain of 10/10. Tr. 471. She received a Ketorolac injection. Tr. 472.

On this record, the ALJ's assertion that Dr. Sosa's assessment of Plaintiff's limitations is not supported by the treatment record is not supported by substantial evidence. Dr. Sosa's treatment

13- OPINION AND ORDER

record supports her February 2012 assertion of disabling limitations arising from both her symptoms including pain from headaches and migraines, abdominal pain from endometriosis, fibroids and uterine cysts, severe nausea and vomiting, and medication side effects including fatigue, and the inability to sustain concentration required for simple work.

### (2) Basis for Described Limitations

Dr. Sosa's treatment notes document ongoing nausea, migraines, headaches, pelvic and abdominal pain, and depression. The treatment notes support Dr. Sosa's assertion of Plaintiff's inability to sustain employment without missing two or more days per month of work due to symptoms, medications, and side effects.

### (3) Conflict with Daily Activities

The Commissioner argues that Plaintiff's activities contradict the severe limitations Dr. Sosa assessed, properly noting this is a valid reason to discount a doctor's opinion to the extent it conflicts with a claimant's daily activities. *Morgan v. Comm'r of the Soc. Sec. Admin.,* 169 F.3d 595, 601-02 (9th Cir. 1999). Tr. 23. The Commissioner notes that Plaintiff functioned independently, cooked, shopped, did chores and housework, and mowed the lawn on occasion. Tr. 239-45. She reported lifting up to 50 pounds, but noted this was "too much." Tr. 244. Plaintiff's daily activities do not contradict Dr. Sosa's assessment.

### (4) Conflict with Objective Medical Evidence

The Commissioner argues that Dr. Sosa's opinion is contradicted by objective medical evidence, correctly asserting that the ALJ may discount physicians' opinions that are conclusory, brief, and unsupported by the record or objective medical findings. *Batson v. Comm'r of the Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2004). The Commissioner contends Plaintiff's

headaches responded to medication, most examinations showed no abdominal pain, and Plaintiff consistently exhibited good concentration, attention and memory on mental status examinations, citing Tr. 386, 489, 507, 555, and 570.

The Commissioner cites the Comprehensive Psychodiagnostic Evaluation completed by Donna C. Wicher, Ph.D. on June 16, 2010, at Tr. 386. Dr. Wicher conducted a comprehensive psychodiagnostic evaluation of Plaintiff. Tr. 384-88. The purpose of the examination was to determine whether Plaintiff had any mental, cognitive, or emotional difficulties which would interfere with her ability to sustain full-time employment. Dr. Wicher diagnosed Major Depressive Disorder, Recurrent, in partial remission, Polysubstance Abuse, currently using marijuana and Rule/out Borderline Personality Disorder. Tr. 387. Dr. Wicher noted features of Borderline Personality Disorder including instability of mood, interpersonal relationships, and vocational functioning, with anger management issues, impulsiveness, identity confusion, and recurrent suicidal behavior.

Dr. Wicher concluded that Plaintiff had mild deficits in her ability to perform activities of daily living, moderate deficits in social functioning, and moderate deficits in concentration, persistence, and pace. Tr. 388. Dr. Wicher stated that if Plaintiff can remain abstinent from drug and alcohol abuse, continue medication management, and receive dialectical behavioral therapy, "her stability in mood and functioning may improve somewhat and allow her to be more employable in the future." *Id.*

The Commissioner points to Dr. Wicher's note at Tr. 386 that "[n]o problems with memory or concentration were noted." *Id.* However, Dr. Wicher concludes that "[h]er overall deficits in concentration, persistence, and pace appear to be moderate." Tr. 388.

15- OPINION AND ORDER

Dr. Wicher's opinion does not conflict with Dr. Sosa's opinion. Both practitioners diagnosed depression with suicidal ideation, and noted Plaintiff had difficulty dealing with other people. Both practitioners found Plaintiff had issues with concentration, persistence and pace.

Transcript 489 is a Mental Health Assessment by Jill Clark, QMHP, LCSW, on June 22, 2011. The Commissioner point to Ms. Clark's note that Plaintiff's [a]ttention was good." Tr. 489. However, in the balance of the Assessment Ms. Clark notes symptoms congruent with PTSD and Depressive Disorder NOS. Tr. 485. Plaintiff reported chronic pain, migraines, back and uterus pain. Tr. 486. Ms. Clark recorded symptoms of depression included sad mood, lost pleasure in activities, decreased energy, irregular sleep, and feelings of worthlessness. Mood disturbance "is severe enough to cause marked impairment." Tr. 487. Symptoms of mania included elevated mood, irritable mood, impulsive activities, and racing thoughts. Symptoms of psychosis included hallucinations. Symptoms of anxiety included irrational worry, difficulty controlling worry, restlessness, irritability, fatigue and sleep disturbance. Symptoms of intense panic included chest pain, difficulty breathing, and headaches. Symptoms of PTSD included hypervigilance and irritability. *Id.* Ms. Clark concluded that Plaintiff's mood and affect were depressed and congruent, and she had poor judgment and limited insight. Tr. 489.

Ms. Clark's opinion does not conflict with Dr. Sosa's opinion. Less than a month before Ms. Clark's assessment Dr. Sosa was sufficiently alarmed by Plaintiff's clear mental health issues that the doctor considered calling a mental health crisis line. Tr. 461. Dr. Sosa prescribed citalopram for depression, and on July 7, 2011, she queried whether Plaintiff's anxiety was causing her nausea. Tr. 454. In August 2011 Dr. Sosa questioned whether nausea and vomiting were psychogenic in origin. Tr. 451. Ms. Clark's assessment is more detailed than Dr. Sosa's treatment notes, but

16- OPINION AND ORDER

completely supports Dr. Sosa's February 2012 assessment that Plaintiff's anxiety and depression made it difficult for Plaintiff to interact with people and that her symptoms and medications interfered with Plaintiff's ability to concentrate sufficiently for simple work.

Transcript 507 is a September 1, 2011 chart note from Brenda L. Abraham, FNP, of Gastroenterology Specialists of Oregon. Nurse Abraham records Plaintiff's complaints of nausea, vomiting, and abdominal pain almost daily for the past two years. Tr. 506. Plaintiff was on a new medication which helped the nausea, and she had had only two episodes of vomiting in the past two weeks. The Nurse noted Plaintiff was alert and oriented times three. Tr. 507.

Nurse Abraham's assessment does not conflict with Dr. Sosa's opinion. That Plaintiff was "alert and oriented times three" does not contradict Dr. Sosa's February 2012 conclusions regarding Plaintiff's functional limitations.

Transcript 555 is part of a March 12, 2012 Psychiatric Assessment by Lucinda Connery, PMHNP. Tr. 553-55. Nurse Connery noted symptoms of depression including self-isolating behavior, feeling badly about herself, violent feelings toward herself and others, and hearing voices. Symptoms of anxiety included a racing heart, feeling shaky, and inability to swallow. Symptoms of PTSD included revenge nightmares, an exaggerated startle reflex, and ongoing intrusive memories of childhood trauma. She assessed a GAF of 41. Tr. 553. Plaintiff reported daily headaches, weekly migraines, chronic pelvic pain, and nausea and dizziness up to twice a week. Tr. 554. Nurse Connery did not comment on Plaintiff's concentration, attention or memory, but she did observe appropriate eye contact, speech and tone, with depressed and anxious mood with tearful, labile affect. Tr. 555. She was oriented times three, with poor judgment and limited insight. Plaintiff was taking Celexa, and Nurse Connery prescribed Abilify in addition for uncontrolled mental health

17- OPINION AND ORDER

symptoms. Nurse Connery's assessment does not conflict with Dr. Sosa's opinion.

Finally, the Commissioner cites Transcript 570 as evidence conflicting with Dr. Sosa's opinion. This is a January 30, 2012 Mental Health Assessment by Laurel Mansoor, LCSW, QMHP. Tr. 565-70. At 570, Ms. Mansoor notes Plaintiff was oriented to person, place, time and circumstances, attention was good, and her memory appeared to be intact. Tr. 570. Ms. Mansoor also notes poor judgment and insight. *Id.* In the balance of the Assessment Ms. Moore notes Plaintiff is suicidal "often," and has migraines, endometriosis, and uterine cysts. Tr. 565. Her diagnoses were PTSD, depressive disorder NOS, and cannabis dependence. Ms. Mansoor assessed a GAF of 41. Her prognosis was poor. Tr. 566.

Symptoms of depression included sad mood, loss of pleasure, difficulty concentrating, irregular sleep, decreased energy, and feelings of hopelessness. Tr. 568. Ms. Mansoor observed that Plaintiff's "[m]ood disturbance is severe enough to cause marked impairment." *Id.* Plaintiff had symptoms of mania including elevated mood, irritated mood, impulsive activities and racing thoughts. Symptoms of psychosis included hallucinations. Symptoms of anxiety included irrational worry, restlessness, irritability, fatigue and sleep disturbance. Panic symptoms included chest pain, shortness of breath and headaches.

This Mental Health Assessment is corroborated by the June 2011 Mental Health Assessment by Ms. Clark and by Dr. Sosa's opinion. Much of Ms. Mansoor's opinion is based on her observations and not on Plaintiff's reports. The ALJ failed to identify clear, convincing, specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Sosa's opinion.

### B. Richard Rosenbaum, M.D.

Dr. Rosenbaum completed a form prepared by counsel on May 4, 2012. Tr. 573-74. He

noted he had been Plaintiff's treating neurologist since March 2012, and she had severe bifrontal migraines with visual aura, nausea, vomiting, and photophobia.. Tr. 573.    Plaintiff had seven migraines in three weeks. He believed they were triggered or aggravated by stress. Dr. Rosenbaum thought the migraines would interfere with Plaintiff's ability to sustain the attention and concentration required to perform simple work for a minimum of eight hours per week.   Tr. 574. He expected Plaintiff would miss at least two days work per month from even a simple, routine job because of her symptoms, medications and side effects.  *Id.*

The ALJ gave Dr. Rosenbaum's opinion "little weight." Tr. 24.  The ALJ said Plaintiff's migraines were responsive to Sumatriptan, citing Dr. Rosenbaum's May 4, 2012 chart note that Plaintiff "has had 7 migraines in last 3 weeks, responsive to sumatriptan." Tr. 575.  The ALJ overlooked that Dr. Rosenbaum , notwithstanding the observation he made in his chart note, still opined as to the limiting effects of Plaintiff's migraines.  The ALJ failed to identify specific, legitimate, clear or convincing reasons to reject Dr. Rosenbaum's opinion.

### C.  Lisa Smith, L.C.S.W.

Ms. Smith completed a form prepared by counsel on May 21, 2012, noting she had been Plaintiff's mental health counselor since January 2012. Tr. 583-87.  She saw Plaintiff once or twice a month, and Plaintiff's current diagnoses were PTSD, depressive disorder NOS, and cannabis dependence.  Tr. 583.  Plaintiff's symptoms included sad mood, anhedonia, decreased energy, hopelessness, worthlessness, mood instability, auditory and visual hallucinations, intrusive thoughts and memories of past trauma, hypervigilance, and trouble sleeping.

Plaintiff was taking Abilify and Celexa. Ms. Smith opined that Plaintiff's social functioning was moderately impaired, but her activities of daily living were not impaired. Tr. 584. Ms. Smith

stated that Plaintiff had marked difficulty in keeping appointments and dealing with people in minor transactions, like waiting in a waiting room. She opined that Plaintiff would be unable to, for at least six hours in a forty hour work week, maintain attention and concentration, perform activities within a schedule, maintain regular attendance, and be punctual, sustain an ordinary routine, or work in proximity to others without being distracted by them. Tr. 585. Ms. Smith concluded that Plaintiff would miss at least two workdays each month from even a simple and sedentary job because of her impairments, symptoms, medications, and side effects. Tr. 587.

The ALJ gave Ms. Smith's opinion "little weight." Tr. 24. The ALJ said Ms. Smith had treated Plaintiff for a limited time and the assessment was based on Plaintiff's incredible self report. The ALJ said Ms. Smith's opinion was contradicted by Dr. Wicher's examination findings.

The ALJ may consider opinions from sources other than "acceptable medical sources," like those from a nurse or social worker. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). As an "other source," Ms. Smith's opinion is treated like a lay witness, and the ALJ may discredit her opinion by providing a germane reason. *Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1223 (9th Cir. 2010). Ms. Smith had spent at least five hours with Plaintiff prior to offering her opinion. Tr. 563, 558, 556, 551, 550. The ALJ's assertion that Ms. Smith had spent "limited time" with Plaintiff is not a germane reason to discount her opinion.

The ALJ rejected Ms. Smith's opinion as based on Plaintiff's not credible self reports. However, Ms. Smith noted anhedonia, mood instability and hypervigilence which are not necessarily based on Plaintiff's self reports. In addition, Ms. Smith specifically noted Plaintiff had difficulty dealing with other people in a waiting room, which is clearly not based on Plaintiff's self reports. The ALJ rejected Ms. Smith's opinion as contradicted by Dr. Wicher's opinion. Tr. 24. The

Commissioner argues that Dr. Wicher found Plaintiff had no problems with memory or concentration, had intact thought processes, normal affect, and judgment. Tr. 386. However, Dr. Wicher also found Plaintiff had many features of a Borderline Personality disorder, including instability of mood and interpersonal relationships, instability of vocational functioning, difficulty controlling anger, impulsiveness, identity confusion, and recurrent suicidal behavior. Tr. 387. Dr. Wicher's observations are consistent with Ms. Smith's observations, and the ALJ erred by rejecting Ms. Smith without identifying a germane reason.

The ALJ's consideration of the medical evidence is not supported by substantial evidence, and the ALJ's rejection of the treating doctors' opinions is not supported by clear and convincing reasons.

## II. Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000), *cert. denied,* 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r,* 635 F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such

evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart,* 340 F.3d 871, 876 (citing *Bunnell v. Sullivan,* 947 F.2d 871(9th Cir. 2003)(en banc)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).

The ALJ's failure to credit the opinions of the treating and examining physicians, and the treating counselor, is erroneous for the reasons set out above. The Vocational Expert testified that, if Drs. Sosa and Rosenbaum's opinions are credited, Plaintiff would be unable to maintain employment. Tr. 59.

Accordingly, this matter is remanded for the calculation and award of benefits.

## CONCLUSION

For these reasons, the decision of the Commissioner is reversed and this matter is remanded to the Commissioner pursuant to Sentence Four, 42 U.S.C. § 405(g) for the calculation and payment of benefits.

IT IS SO ORDERED.

Dated this 5th day of June, 2015.

John V. Acosta
United States Magistrate Judge

22- OPINION AND ORDER